IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY LEWIS, *et al.*

    *Plaintiffs*,

    v.

THE BALTIMORE CONVENTION
CENTER, *et al.*

    *Defendants*.

Civil Action No. ELH-12-2008

**MEMORANDUM**

Plaintiffs, current and former employees of the Baltimore Convention Center (the "Convention Center"), instituted this putative class action and collective action in July 2012 against the Convention Center and Peggy Daidakis, the Director of the Convention Center. ECF 1. Plaintiffs alleged that the defendants wrongfully withheld wages and overtime compensation from plaintiffs, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (Count I); the Maryland Wage and Hour Law ("MWHL"), Md. Code (2006 Repl. Vol, 2012 Supp.), Lab. & Empl. Article §§ 3-401 *et seq.* (Count II); and the Maryland Wage Payment and Collection Law ("MWPCL"), *id.* §§ 3-501 *et seq.* (Count III). *Id.* at 2-3. In addition, they complained that defendants withheld compensation and suspended employees without cause, in breach of the Baltimore Municipal Employees contract of employment with the City of Baltimore, dated July 1, 2008 ("2008 Contract") (Count IV). *See* ECF 1 at 3-6.

In December 2012, on defendants' motion, I dismissed Counts II, III, and IV of the Complaint. ECF 6 (motion to dismiss); ECF 16 (Order). Counts II and III were dismissed because municipalities and their agencies, such as the Convention Center, are not "employers"

within the meaning of the MWHL or MWPCL.  ECF 16 at 2 ("If the City is not an employer under [Maryland wage laws], neither are defendants.").  I dismissed Count IV because plaintiffs had failed to exhaust remedies available under the 2008 Contract.  *Id*. at 3.  Specifically, I held that plaintiffs could not sue for breach of contract until they had exhausted the grievance procedure in the 2008 Contract.  *Id*.

Accordingly, in January 2013, plaintiffs filed a grievance against the Convention Center and the Mayor and City [Council] of Baltimore, on behalf of "all other former and current employees" of the Convention Center (the "2013 Grievance").  *See* ECF 20-1 at 4-6 (grievance). The grievance was submitted to the Labor Commissioner for the City of Baltimore.  *Id.* at 1.  By joint motion filed in January of 2013, the parties sought to stay proceedings in this case pending resolution of the 2013 Grievance.  *See* ECF 20.  I granted that Motion.  ECF 21 (Order granting stay).  Thereafter, the parties twice sought to extend the stay.  ECF 22 (filed July 2013); ECF 24 (filed October 2013).  I approved both requests.  ECF 23; ECF 25 (Orders).

The parties filed a joint status report in March 2014, in which they indicated that the grievance process had come to an end, that plaintiffs wanted to file an amended complaint, and that defendants opposed plaintiffs' proposed amendments.  ECF 26 (status report).  Plaintiffs anticipated filing their motion to amend within three weeks.  *Id*. at 2.  Nonetheless, plaintiffs subsequently filed two consent motions for extension of time to amend the complaint (ECF 27; ECF 31), which the Court approved.  ECF 30; ECF 32.

On June 12, 2014, plaintiffs filed their "Motion for Leave to Amend Complaint" (ECF 33, the "Motion"), pursuant to Fed. R. Civ. P. 15, along with a proposed "First Amended Complaint" (ECF 28, "Proposed Amended Complaint"), and a redlined version, showing

changes between the original and the proposed amended complaints. ECF 33-2 (redlined version). In their Motion, plaintiffs explain that the proposed amendments do two things. First, they seek to update "the original Complaint to reflect the current status of the claims and allegations and to implement the court's order." ECF 33 at 2. Second, they add two new claims, one for "breach of the negotiated agreement" ("Count V"), and one for breach of the duty of fair representation ("Count VI"). *Id*. at 3. Plaintiffs state: "These claims together constitute a hybrid action required for enforcement and implementation of the employees' rights under circumstances such as provided in this action." *Id*. (citing, *e.g.*, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)). In light of Count VI, plaintiffs also seek to add as a defendant their union, AFL-CIO, Council No. 67, Local No. 44 (the "Union"). *See* ECF 33-2 at 2 (redlined version).

Defendants filed a response in opposition to plaintiffs' Motion on July 18, 2014. ECF 36 ("Opposition"). They argue that plaintiffs should not be permitted to add Counts V and VI because the amendments would be futile. ECF 36 at 6. Defendants assert that plaintiffs cannot sue the Convention Center via the "hybrid action" plaintiffs propose because states and "political subdivisions thereof" are expressly excluded from the definition of "employer" in the federal labor law upon which plaintiffs rely. *Id*. at 7. In addition, defendants state: "Even if there were statutory authority to consider Plaintiffs' claims in this case [against the Union, in Count VI], the proposed amendment should be denied as futile because it fails to plead facts supporting the claim that the Union violated its duty of fair representation." *Id*. at 11.

In response to defendants' Opposition, plaintiffs filed a motion for extension of time to file their reply (ECF 37), which I granted. ECF 38 (Order). However, as of the date of this

Memorandum, plaintiffs have not filed a reply, and the time to do so has passed. *See* Local Rule 105.2(a).

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion (ECF 33) in part and deny it in part. I will grant plaintiffs leave to file an amended complaint that includes changes reflecting the current status of the claims, following my Order of December 10, 2012, and any new facts. *See* ECF 16 (dismissing Counts II, III, and IV). But, I will deny leave to amend the complaint to include Counts V and VI, because the addition of either count would be futile. And, because I will deny leave to add Count VI, I will also deny leave to add the Union as a defendant.

### Factual Background[1]

As stated, plaintiffs filed their Complaint in July 2012. ECF 1. The Complaint names eight persons as plaintiffs: Anthony Lewis, William Weeks, Gregory Hall, Darrell Lilly, Louis Pilsch, Leonard Ward, Michael Ward, Jr., and Gratten Branch. ECF 1. The Proposed Amended Complaint names the same eight plaintiffs, but adds, in the caption, "all employees filing a Consent form to join the lawsuit." ECF 33-1 at 2. Plaintiffs' Motion states that there were, as of the date of the Motion, thirty-six plaintiffs in total. ECF 33 at 1. The docket reflects that, as of the date of this Memorandum, twenty-nine plaintiffs, in addition to the eight named in the

---

[1] To my knowledge, the Fourth Circuit has not expressly stated a position as to what evidence may be considered when determining whether a proposed amended complaint would be futile for purposes of Rule 15(a)(2). In any event, I will decide plaintiffs' Motion on the facts alleged in their Proposed Amended Complaint.

caption, have filed affidavits consenting "to act as a plaintiff in this case," pursuant to 29 U.S.C. § 216(b).[2]  ECF 12, 13, 15.

All plaintiffs, in both complaints, are alleged to be "hourly employees" of the Convention Center,  ECF 1 at 3; ECF 33-1 ¶ 41, although some are former employees. *See, e.g.*, ECF 33-1 ¶ 12.  They are also members of the Union.  ECF 1 at 3; ECF 33-1 at ¶ 67.  The original Complaint does not describe plaintiffs' job titles or duties in any way.  ECF 1.  The Proposed Amended Complaint alleges that all putative class members are hourly employees in the Building Services and Client Services departments at the Convention Center.  ECF 33-1 ¶ 29.  The department position lists contain job titles such as Painters and Custodians, respectively.  *Id.*

Defendant Convention Center is "a convention and exhibition hall" in Baltimore.  ECF 1 ¶ 13.  Both sides agree that the Convention Center "is municipally owned and operated by the City of Baltimore."  *Id.*; ECF 6 at 1 (defendants' motion to dismiss).  Indeed, defendants have previously asserted:  "The correct name of the [plaintiffs'] employer is 'Mayor and City Council of Baltimore.'  The Convention Center is not a separate legal entity."  ECF 6 at 1.  Similarly, plaintiffs allege:  "The Baltimore Convention Center is a constituent agency of the Mayor and City Council of Baltimore, formed under Article 1, Subtitle 13 of the Baltimore City Code."  ECF 1 ¶ 13; *see also* ECF 1 ¶ 3 ("This Court has personal jurisdiction over Defendants as  a State entity of the State of Maryland … .").

---

[2] 29 U.S.C. § 216(b) states, in relevant part:  "An action to recover the liability prescribed in either of the preceding sentences [for violation of the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

Defendant Daidakis is Director of the Convention Center.  ECF 1 ¶ 14.  Plaintiffs allege she is "authorized to direct and execute labor relations ordinances and policies of the Mayor and City Council on behalf of the Baltimore Convention Center."  *Id.*  Although Daidakis remains a named defendant in the Proposed Amended Complaint, none of the counts in the Proposed Amended Complaint is alleged against her.  *See* ECF 33-1, at 1, 14, 15, 22 (alleging Counts I and V against the Convention Center, and Count VI against the Union).

Additional facts are included in the Discussion.

## Discussion

Fed. R. Civ. P. 15(a)(2) instructs that courts should "freely" grant leave to amend pleadings "when justice so requires," and commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  A district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."  *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey,* 438 F.3d 404, 426–29 (4th Cir. 2006) (en banc).

"Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.'"  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted)).  Thus, for example, an amendment "would be futile if the complaint,

as amended, would not withstand a motion to dismiss." *Elrod v. Busch Entm't Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (per curiam) (citing *Katyle*, 637 F.3d at 471); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 200 (4th Cir. 2002) (noting district court denied leave to amend complaint "on the ground of futility" because the proposed amendments "failed to state a claim upon which relief could be granted").

Here, defendants argue that "the proposed amendment is futile" because "there is no legal authorization for a hybrid breach of contract/ duty of fair representation claim" against defendants. ECF 36 at 1. And, they add, "even if such causes of action were available as a matter of law, the proposed amendment fails to plead a violation of the duty of fair representation, which is fatal to the breach of contract claim as well." *Id*.

Plaintiffs expressly state in their Motion and in the Proposed Amended Complaint that they mean to allege a "hybrid" action. ECF 33 at 2; ECF 33-1 at 3. In their Motion, for example, they state: "These claims together [Count V and VI] constitute a hybrid action required for enforcement and implementation of the employees' rights under circumstances such as provided in this action." *Id.* (citing, *e.g.*, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)). Plaintiffs do not say what they mean by "circumstances such as provided in this action," but the import is clear from their citation.

*Hines*, and all of the cases plaintiffs string-cite thereafter, *see* ECF 33 at 2, considers what is commonly called a "hybrid § 301/fair representation claim," *e.g.*, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983), or sometimes just a "hybrid 301" action, *e.g.*, *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656-57 (4th Cir. 2002). In *DelCostello*, 462 U.S. at 164, the Supreme Court said: "Such a suit, as a formal matter, comprises two causes of

action.  The suit against the employer rests on § 301 [of the Labor Management Relations Act of 1947 ("LMRA")],[3] since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act [("NLRA")]."

### A.  Hybrid Actions

In relevant part, § 301 of the LMRA, codified at 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  Thus, § 301 "provides a federal remedy for breaches of a collective bargaining agreement."  *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991); *see also*, *e.g.*, *Vaca v. Sipes*, 386 U.S. 171, 179-80 (1967) (noting § 301 "permits suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of" the National Labor Relations Board).

However, where the collective bargain agreement itself provides exclusive remedies for violations of the agreement, "it is settled that an employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."  *Vaca*, 386 U.S. at 184 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965) (holding, at 652-

---

[3] The Labor Management Relations Act of 1947, also known as the Taft-Hartley Act, amended the National Labor Relations Act of 1935.  References to § 301 refer to § 301 of the LMRA, 61 Stat. 156, which is codified at 29 U.S.C. § 185(a).  Accordingly, courts sometimes refer to § 301 as § 185, and sometimes cite to the NLRA, rather than the LMRA.  Because § 301 refers specifically to text of the law that amended the NLRA, *i.e.*, the LMRA, I will cite to the LMRA.

53, that "unless the contract provides otherwise, there can be no doubt that the employee must first afford the union the opportunity to act on his behalf")); *see also Amburgey*, 923 F.2d at 29 ("The reasoning behind this rule is simple. Federal labor law policy favors adjustment by the parties of disputes arising under a collective bargaining agreement.").  If the employee brings suit prematurely, "the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." *Vaca*, 386 U.S. at 184.

As discussed, such was the case here.  In December 2012, defendants successfully moved to dismiss plaintiffs' breach-of-contract claim on grounds that it failed to state a claim for relief because it was clear plaintiffs had not exhausted exclusive remedies available in the contract. *See* ECF 16 at 2-3 (Memorandum and Order).[4]

In response, in January 2013, through counsel and not the Union, plaintiffs filed a grievance pertaining to the violations alleged in the Complaint.  2013 Grievance, ECF 20-1. According to the Proposed Amended Complaint, the 2013 Grievance proceeded through "Step 3" of the grievance procedure provided in plaintiffs' collective bargaining agreement, "which was a hearing held before the Office of the Labor Commissioner for Baltimore City on May 30, 2013." ECF 33-1 ¶ 93.  The "Labor Commissioner's Office issued a decision on June 30, 2013," which denied all but one of plaintiffs' grievance claims.  *Id.* ¶ 94.  The plaintiffs "sought to

---

[4] In their original Complaint, plaintiffs did not allege a violation of LMRA § 301. Rather, plaintiffs simply alleged "breach of contract," without reference to any particular law or provision. *See* ECF 1 at 19.  In their motion to dismiss, defendants interpreted plaintiffs' claim as if under Maryland common law, *see* ECF 6 at 3 (citing Maryland cases), which plaintiffs appeared to affirm in their opposition to the motion.  *See* ECF 10 at 9 (citing Maryland cases). Accordingly, I dismissed plaintiffs' breach-of-contract claim on finding they had failed to exhaust exclusive remedies in the 2008 Contract, as required under Maryland law.  *See* ECF 16 at 3 (memorandum and order) (citing *Gazunis v. Foster*, 400 Md. 541, 565, 929 A.2d 531, 545 (2007)).

proceed to Step 4, an arbitration hearing," but "the City refused to permit" the plaintiffs to proceed, arguing that only the Union could formally request Step 4. *Id.* ¶ 95. "By letter of February 26, 2014," the Union informed plaintiffs that it would not arbitrate the issues grieved by plaintiffs. *Id.* ¶ 96.

In sum, at this point, plaintiffs have "at least attempt[ed] to exhaust the exclusive grievance and arbitration procedures," *see Vaca*, 386 U.S. at 184, but they could not exhaust all available remedies, because the Union determined it would not push the matter through to Step 4. Thus, plaintiffs appear to be between a rock and a hard place, *i.e.*, permitted to bring suit for breaches of the collective bargaining agreement under § 301, but required to exhaust contractual remedies that they cannot access.

The "hybrid 301" action traces back to the Supreme Court's hypothetical consideration in *Vaca* of just such a quandry. Vaca, a union member, brought suit in state court against his union, alleging that the union "had arbitrarily, capriciously and without just or reasonable reason or cause refused to take his grievance with [his employer] to arbitration under the fifth step of the bargaining agreement's grievance procedures." *Vaca*, 386 U.S. at 173 (quotations omitted). In response, the union argued that Vaca's claim was "an unfair labor practice" and was thus subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). *Id.* The Court was asked to decide whether the NLRA provided the NLRB with exclusive jurisdiction. *Id.* at 174.

In holding that the NLRB did not have exclusive jurisdiction, the Court said that "it is obvious that the courts will be compelled to pass upon whether there has been a breach of the

duty of fair representation in the context of many § 301 breach-of-contract actions." *Vaca*, 386 U.S. at 187. It reasoned, *id.* at 185-86 (citations omitted):

> We think that another situation when the employee may seek judicial enforcement of his contractual rights [under § 301] arises, if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements.
>
> For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.

The Court concluded, therefore, that a jurisdictional scheme made no sense if it would, *inter alia*, "permit the … courts to adjudicate the Union's conduct in an action against" the employer "but not in action against the Union itself," and "permit a court that has litigated the fault of employer and union to fashion a remedy only with respect to the employer." *Vaca*, 386 U.S. at 187.

Plaintiffs' alleged "hybrid" action appears to fit squarely within the framework established by *Vaca* and subsequently endorsed in, *e.g.*, *DeCostello*, 462 U.S. at 164-56. *See also*, *e.g.*, *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656-57 (4th Cir. 2002). They wish

to bring a breach-of-contract claim against the Convention Center, but "in the face of a [likely] defense based upon the failure to exhaust contractual remedies," *Vaca*, 386 U.S. at 186, they must "prove that the union as bargaining agent breached its duty of fair representation in its handling of the [plaintiffs'] grievance." *Id*.; *see also Thompson*, 276 F.3d at 657 (stating "an employee must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer") (citations omitted).

### B.  Count V (Breach of Contract)

However, as discussed, defendants argue that plaintiffs' "hybrid" claim must fail because the Convention Center, as a State entity, is not subject to suit under LMRA § 301.  ECF 36 at 7. As quoted above, § 301 permits suit in federal court "for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  But, § 152(2) of the LMRA, as codified, defines "employer" as follows (emphasis added):

> The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but *shall not include* the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or *any State or political subdivision thereof*, or any person subject to the Railway Labor Act as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

Therefore, defendants argue, the Convention Center is not an "employer" under § 301, as defined by § 152(2).  And, plaintiffs' "hybrid" breach-of-contract allegation (Count V) fails to state a claim.  ECF 36 at 7.

"The term 'political subdivision' is not defined" in the LMRA.  *N.L.R.B. v. Princeton Mem'l Hosp.*, 939 F.2d 174, 177 (4th Cir. 1991).  But, the Supreme Court has relied on a two-part test, first developed by the NLRB, for determining whether a given entity is a political

subdivision under the LMRA.  *NLRB v. Nat. Gas Utility Dist. of Hawkins Cnty.*, 402 U.S. 600, 604-05 (1971).  "The term includes those entities that are either '(1) created directly by the State, so as to constitute a department or administrative arm of the government or (2) … administered by individuals responsible to public officials or the general electorate.'"  *Princeton Mem'l Hosp.*, 939 F.2d at 177 (quoting *Hawkins Cnty.*, 402 U.S. at 604-05).

The Convention Center meets the *Hawkins County* test for a "political subdivision" under either prong, per the allegations in plaintiffs' Proposed Amended Complaint.  As discussed, plaintiffs agree that the Convention Center is a State entity.  Indeed, they repeatedly allege this fact in their Complaint and their Proposed Amended Complaint.  ECF 1 ¶ 3 ("This Court has personal jurisdiction over Defendants as a State entity of the State of Maryland … ."); ECF 33-1 ¶ 3 (same).  Moreover, plaintiffs allege that defendant Daidakis, Director of the Convention Center, is assigned duties "on behalf of the Mayor and City Council of Baltimore."  ECF 1 ¶ 14; ECF 33-1 ¶ 14.  Therefore, plaintiffs effectively also allege that the Convention Center is "administered by individuals responsible to public officials or the general electorate."  *See Hawkins Cnty.*, 402 U.S. at 604-05.

Accordingly, defendants are correct: the text of § 152 unambiguously exempts the Convention Center from the definition of "employer," and from suit under § 301.  *See, e.g.*, *Teledyne Econ. Dev. v. N.L.R.B.*, 108 F.3d 56, 59 (4th Cir. 1997) ("There is nothing ambiguous about this language.  By its terms, section [15]2(2) exempts … government entities or wholly owned government corporations from its coverage … ."); *see also Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15, 23-24 (1982) (citing §

152(2) for proposition that "labor relations between local governments and their employees are the subject of a longstanding statutory exemption" from federal labor law).

In their Opposition, defendants go on to argue that "there is no State law authority for enforcement of municipal collective bargaining agreements."  ECF 36 at 7.  However, because plaintiffs expressly state in their Proposed Amended Complaint that they are alleging a  "hybrid breach of the Negotiated Agreement … and breach of the duty of fair representation," ECF 33-1 at 3, I need not address whether plaintiffs' allegations state a claim under any other potentially applicable law.   Nothing in plaintiffs' Proposed Amended Complaint, nor in their Motion, suggests that they are alleging breach of contract under anything other than § 301.  And, in any event, because plaintiffs have chosen not to reply to defendants' Opposition, I have no reason to believe plaintiffs disagree with defendants' State-law arguments.

Accordingly, amendment of the Complaint to include Count V would be futile, and I will deny leave to amend.  *See*, *e.g.*, *Katyle*, 637 F.3d at 471 (holding futility is apparent where complaint fails to state a claim).

## C.  Count VI (Breach of the Duty of Fair Representation)

For the same reason, the addition of Count VI would also be futile.  It is well established that the NLRA provides an implied cause of action for breach of the duty of fair representation against labor organizations covered by the act.  *See*, *e.g.*, *Vaca*, 386 U.S. at 177 ("It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, and in its enforcement of the resulting collective bargaining agreement.  The statutory duty of fair representation was developed over 20 years ago in a series

of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, and was soon extended to unions certified under the [NLRA].") (citations omitted); *see also Thompson*, 276 F.3d at 657.  And, as discussed, plaintiffs have alleged a "hybrid" action under federal labor law.  *See* ECF 33-1 at 3; ECF 33 at 2.

Because the Convention Center is not an "employer" within the meaning of federal labor law, as discussed, plaintiffs are not "employees," and the Union is not a "labor organization," within the meaning of federal labor law. Sections 152(3) and (5) define "employee" and "labor organization," respectively, as follows (emphasis added):

> (3) The term 'employee' shall include any employee, … *but shall not include any individual* employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual *employed by* an employer subject to the Railway Labor Act, … or by *any other person who is not an employer as herein defined*.
>
> ***
>
> (5) The term 'labor organization' means *any organization* of any kind, or any agency or employee representation committee or plan, in which employees participate and *which exists for the purpose, in whole or in part, of dealing with employers* concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

These definitions, in combination with the definition of "employer" in §152(2), preclude claims for breach of the duty of fair representation by employees of "States or political subdivisions thereof," such as plaintiffs.  *See, e.g., Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 896 (D. Md. 2011) ("Here, it is undisputed that Plaintiff was employed by the Board, which is a state agency. … Thus, Plaintiff's claim for breach of the duty

of fair representation cannot prevail under federal law."); *Reid v. Prince George's Cnty. Pub. Sch.*, AW-11-02470-AW, 2011 WL 5513221, at *4 (D. Md. Nov. 10, 2011) ("[A]s this Court has previously found, the provisions of the NLRA and the judicially created duty of fair representation under the NLRA do not apply to employees like Plaintiff who were employed by public employers such as the School Board."); *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 360 (7th Cir. 1998) ("Since the School Board is not an 'employer' and Strasburger is not an 'employee,' [§ 301] provides no federal basis for his claim.").

Accordingly, amendment of the Complaint to include Count VI would be futile, and I will deny leave to amend.  *See, e.g.*, *Katyle*, 637 F.3d at 471.

## Conclusion

For the foregoing reasons, I will GRANT, in part, and DENY, in part, plaintiffs' Motion (ECF 33).  Plaintiffs may amend their Complaint to update it with new facts and in light of my Order of December 10, 2012 (ECF 16).  Plaintiffs may not amend their Complaint to add Counts V or VI or to add the Union as a defendant on the basis of those two counts.

A separate Order follows, consistent with this Memorandum.


Date: January 20th, 2015                        _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge